## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| BILLINGS CLINIC,<br><br>     Plaintiff,<br><br>vs.<br><br>AMERICAN GUARANTEE AND<br>LIABILITY INSURANCE<br>COMPANY,<br><br>     Defendant. | CV 21-32-BLG-SPW-TJC<br><br><br>**FINDINGS AND<br>RECOMMENDATION OF<br>U.S. MAGISTRATE JUDGE** |

Plaintiff Billings Clinic brings this action against Defendant American Guarantee and Liability Insurance Company ("AGLIC") arising from AGLIC's failure to pay benefits under a commercial property insurance policy for lost business income attributable to the COVID-19 pandemic. (Doc. 8.)

Presently before the Court is AGLIC's Motion to Dismiss. (Doc. 12.) The motion is fully briefed and ripe for the Court's review. (Docs. 18, 21.)

Having considered the parties' submissions, the Court **RECOMMENDS** AGLIC's motion be **GRANTED**, as set forth below.

## I.  BACKGROUND

Billings Clinic is Montana's largest health care system, and serves Montana, Wyoming and the western Dakotas. AGLIC issued an all-risk "Zurich EDGE

Healthcare Policy" to Billings Clinic for the period of July 1, 2019 to July 1, 2020, which provided up to $650,000,000 for covered losses.  In April 2020, Billings Clinic initiated a claim under the Policy for losses sustained after it suspended its elective and non-urgent procedures in response to the COVID-19 pandemic. Billings Clinic alleges AGLIC has improperly withheld coverage proceeds, and therefore, filed this action for breach of contract and declaratory judgment.  AGLIC moves to dismiss, arguing Billings Clinic has not plausibly alleged facts that could trigger coverage under the Policy.

The Insuring Agreement of the Policy[1] provides:

> This Policy Insures against direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property, at an Insured Location described in Section II-2.01, all subject to the terms, conditions and exclusions state in this Policy.

(Doc. 8 at 49.)

The term **Covered Cause of Loss** is defined as "[a]ll risks of direct physical loss of or damage from any cause unless excluded."  (Doc. 8 at 95.)

The Policy provides coverage for business interruption claims, referred to as Time Element Coverages.  (Doc. 8 at 60.)  The Time Element Coverages include

---

[1] When considering motions to dismiss, the Court may consider materials attached to the complaint or incorporated by reference. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Here, Billings Clinic has attached a copy of the Policy, as well as several "government shutdown orders" to its Complaint.  The Court, therefore, may consider the contents of the Policy and the orders, without converting the instant motion to one for summary judgment under Rule 56.  *Id.*

Gross Earnings, Extended Period of Liability, Extra Expense, and Leasehold Interest.  (*Id.* at 60-63.)  The Time Element Coverages all require "direct physical loss of or damage" to insured property.  (*Id.*)

In addition, the Policy provides several Special Coverages under which Billings Clinic has asserted claims.  (*Id.* at 65-81.)  The relevant Special Coverages include Civil or Military Authority, Contingent Time Element, Ingress/Egress, Protection and Preservation of Property, Protection of Patients, Tenants Prohibited Access, and Interruption by Communicable Disease.  (*Id.*)  All but the final two of the Special Coverages require an element of physical loss or damage.

The Civil or Military Authority, Contingent Time Element, and Ingress/Egress Coverages require "direct physical loss of or damage caused by a Covered Cause of Loss."  (*Id.* at 66-67, 71.)  The Protection and Preservation of Property Coverage is similarly triggered by actions rendered necessary "due to actual or imminent physical loss or damage due to a Covered Cause of Loss."  (*Id.* at 75.)  Likewise, the Protection of Patients Coverage covers actions necessary "due to impending, physical loss or damage due to a Covered Cause of Loss."  (*Id.* at 80.)

As to the remaining two Special Coverages, the Tenants Prohibited Access Coverage is triggered if "access to [an Insured Location] by the Insured's suppliers, customers, or employees is physically obstructed due to the owner, landlord or a

legal representative of the building owner or landlord, prohibiting access to the Insured Location."  (*Id.* at 76.)

The final Coverage, Interruption by Communicable Disease Coverage, provides:

> The Company will pay for the actual Gross Earnings loss sustained by the Insured, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** is caused by order of an authorized governmental agency enforcing any law or ordinance regulating communicable diseases and that such portions of the location are declared uninhabitable due to the threat of the spread of communicable disease, prohibiting access to those portions of the **Location**.

> (*Id.* at 79.)

The Policy also contains a Contamination Exclusion, which is applicable to all of the foregoing Coverages except the Interruption by Communicable Disease Coverage.  The exclusion provides:

> The following exclusions apply unless specifically stated elsewhere in this Policy:

> This Policy excludes the following unless it results from direct physical loss or damage not excluded by this Policy.

> **Contamination**, and any cost due to **Contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided by the Radioactive Contamination Coverage of this Policy.

> (*Id.* at 57.)  The Policy defines "Contamination" as:

> **Contamination(Contaminated)** – Any condition of property due to the actual presence of any foreign substance, impurity, pollutant,

4

hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, Fungus, mold or mildew.

(*Id.* at 95.)

AGLIC contends Billings Clinic's claim does not fall within any of the relevant Coverages because there is no direct physical loss of or damage to property and because other requirements, such as prohibition of access to premises, are not satisfied. AGLIC further argues the Contamination Exclusion bars the Clinic's claim under all Coverages, except the Interruption by Communicable Disease Coverage. With regard to the Interruption by Communicable Disease Coverage, AGLIC asserts Billings Clinic has failed to allege facts that would satisfy the requirements for that Coverage.

Billings Clinic counters the Policy provides coverage because the Clinic has alleged it suffered a direct physical loss of or damage to its property as a result the government shutdown orders and the presence of COVID-19 at its properties. Billings Clinic asserts that a "direct physical loss" occurs when an insured cannot use its premises for its complete and regular operations. Billings Clinic further argues the Contamination Exclusion does not bar coverage, and that it has sufficiently alleged facts triggering coverage under the Interruption by Communicable Disease Coverage.

/ / /

## II.    DISCUSSION

### A.    Legal Standards

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).  The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P 8(a)).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  A plausibility determination is context specific, and courts must draw on judicial experience and common sense in evaluating a complaint.  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

A court considering a Rule 12(b)(6) motion must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party.  *See e.g.*, *Wyler Summit P'ship v. Turner Broad.*

6

*Sys., Inc.* 135 F.3d 658, 661 (9th Cir. 1998).  However, "bare assertions…

amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . for

the purposes of ruling on a motion to dismiss are not entitled to an assumption of

truth."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting

*Twombly*, 550 U.S. at 555).  Such assertions do nothing more than state a legal

conclusion, even if the conclusion is cast in the form of a factual allegation.  *Id.*

The Court's jurisdiction over this action is based on diversity of citizenship.

Thus, the Court must apply the substantive law of Montana.  *Medical Laboratory*

*Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812

(9th Cir. 2002).  In Montana, the interpretation of an insurance contract is a

question of law.  *Scentry Biologicals, Inc. v. Mid-continent Cas. Co.*, 319 P.3d

1260, 1264 (2014).  A court interpreting an insurance policy is to read the policy as

a whole and, to the extent possible, reconcile the policy's various parts to give each

meaning and effect.  *O'Connell v. Liberty Mut. Fire Ins. Co.*, 43 F.Supp.3d 1093,

1096 (D. Mont. 2014) (*citing Newbury v. State Farm Fire & Cas. Ins. Co. of*

*Bloomington, Ill.*, 184 P.3d 1021 (2008)).  The terms and words used in an

insurance policy are to be given their usual meaning and construed using common

sense.  *Hardy v. Progressive Specialty Ins. Co.*, 112, 67 P.3d 892, 896 (Mont.

2003).

Any ambiguities in the insurance contract are construed against the insurer and in favor of extending coverage. *Revelation Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 206 P.3d 919, 929 (Mont. 2009). "An ambiguity exists when the policy, taken as a whole, is reasonably susceptible to two different interpretations." *Heggem v. Capitol Indem. Corp.*, 154 P.3d 1189, 1193 (Mont. 2007). But a court should not "seize upon certain and definite covenants expressed in plain English with violent hands and distort them so as to include a risk clearly excluded by the insurance contract." *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469, 474 (Mont. 2005). Moreover, "a court may not create an ambiguity where none exists, nor may a court rewrite an insurance policy by ignoring clear and unambiguous language to accomplish a 'good purpose.'" *Heggem*, 154 P.3d at 1193.

The insured bears the burden of showing that its claim falls within the basic scope of coverage under the policy. *Travelers Cas. & Surety Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469, 476 (2005). In turn, the insurer has the burden of proving the claim is excluded under an exclusionary clause. *Id.*

### B.   Direct Physical Loss of or Damage to Covered Property

One of the primary issues in dispute is whether Billings Clinic can meet its burden to plausibly show it suffered a "direct physical loss of or damage to"

8

property to trigger coverage under the Policy.  The Court finds Billings Clinic cannot do so.

It does not appear that Montana courts have interpreted the Policy language at issue, or addressed whether the presence of COVID-19 or the suspension of operations due to the pandemic, constitute a "direct physical loss of or damage to" property.  But every federal circuit court, and the vast majority of district courts, that have addressed the issue have determined COVID-19 and the associated public health orders unambiguously do not constitute a "direct physical loss." *See e.g. Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885 (9th Cir. 2021) (affirming dismissal of the insured's claims related to the COVID-19 pandemic because the insured did not suffer a "direct physical loss of or damage to property" as required for coverage under commercial property policy); *Selane Products, Inc. v. Cont'l Cas. Co.*, 2021 WL 4496471 (9th Cir. Oct. 1, 2021); *Aggie Inv., LLC v. Cont'l Cas. Co.*, 2022 WL 257439 (5th Cir. Jan. 26, 2022); *Ascent Hosp. Mgmt. Co. v. Emp'r Ins. Co. of Wausau*, 2022 WL 130722 (11th Cir. Jan. 14, 2022); *Estes v. Cincinnati Ins. Co.*, 23 F.4th 695 (6th Cir. 2022); *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 22 F.4th 450 (5th Cir. 2022); *10012 Holdings, Inc. v. Sentinel Ins. Co.*, 21 F.4th 216 (2d. Cir. 2021); *Sandy Point Dental v. Cincinnati Ins. Co.*, 20 F.4th 327 (7th Cir. 2021); *Goodwill Indus. of Central Okla. v. Philadelphia Indem. Ins. Co.*, 21 F.4th 704 (10th Cir. 2021); *Bridal Expressions*

*LLC v. Owners Ins. Co.*, 2021 WL 5575753 (6th Cir. Nov. 30, 2021); *In re Zurich*

*Am. Ins. Co.*, 2021 WL 4473398 (6th Cir. Sept. 29, 2021); *Santo's Italian Café*

*LLC v. Acuity Ins. Co.*, 15 F.4th 398 (6th Cir. 2021); *Gilreath Fam. & Cosmetic*

*Dentistry, Inc. v. Cincinnati Ins. Co.*, 2021 WL 3870697 (11th Cir. Aug. 31, 2021);

*Oral Surgeons v. Cincinnati Ins. Co.*, 2 F.4th 1141 (8th Cir. 2021).[2]

Moreover, the circuits have rejected the principle arguments Billings Clinic

presses here – that "direct physical loss of" includes the loss of use or access to

covered property; that the Policy language is ambiguous; or that the presence of the

virus at the insured location can constitute a "direct physical loss of or damage to"

---

[2] *See also Palomar Health v. Am. Guar. & Liability Ins. Co.*, 2021 WL 4035005 (S.D. Cal. Sept. 3, 2021); *Lindenwood Female College v. Zurich Am. Ins. Co.*, 2021 WL 5050065 (E.D. Mo. Nov. 11, 2021); *Northwell Health, Inc. v. Lexington Ins. Co.*, 2021 WL 3139991 (S.D. N.Y. July 26, 2021); *Ralph Lauren Corp. v. Factory Mut. Ins. Co.*, 2021 WL 1904739 (D. N.J. May 12, 2021); *Blue Coral, LLC v. West Bend Mut. Ins. Co.*, 533 F.Supp.3d 279 (E.D. N.C. 2021); *Paradigm Care & Enrichment Ctr. v. West Bend Mut. Ins. Co.*, 529 F.Supp.3d 927 (2021); *Westside Head & Neck v. Hartford Fin. Servs. Group, Inc.*, 526 F.Supp.3d 727 (C.D. Cal. 2021); *Restaurant Group Mgmt., LLC v. Zurich Am. Ins. Co.*, 2021 WL 1937314 (N.D. Ga. Mar. 16, 2021); *Circus LV, LP v. AIG Specialty Ins. Co.*, 525 F.Supp.3d 1269 (D. Nev. 2021); *Café Plaza de Mesilla Inc. v. Cont. Cas. Co.*, 519 F.Supp.3d 1006 (D. N.M. 2021); *Salon XL Color & Design Group, LLC v. W. Bend Mut. Ins. Co.*, 517 F.Supp.3d 725 (2021); *Zwillo V, Corp. v. Lexington Ins. Co.*, 504 F.Supp.3d 1034 (W.D. Mo. 2020); *Border Chicken AZ LLC v. Nationwide Mut. Ins. Co.*, 501 F.Supp.3d 699 (D. Ariz. 2020); *Boxed Foods Co., LLC v. Cal. Capital Ins. Co.*, 497 F.Supp.3d 516 (N.D. Cal. 2020); *Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*, 495 F.Supp.3d 1289 (N.D. Ga. 2020); *Mark's Engine Co. No. 28 Restaurant, LLC v. Travelers Indem. Co. of Connecticut*, 492 F.Supp.3d 1051 (C.D. Cal. 2020); *Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*, 487 F.Supp.3d 937 (S.D. Cal. 2020).

property. *See e.g. Mudpie*, 15 F.4th at 892 (finding the phrase "physical loss of or damage to" requires "an insured to allege physical alteration of its property," therefore loss of use due to stay at home orders was not covered); *Estes*, 23 F.4th at 700-01 (losses sustained by dental practice as a result of government shutdown orders that limited nonemergency care did not qualify as a "direct physical loss" under insurance policy); *Terry Black's Barbecue*, 22 F.4th at 457-58 (holding "physical loss of property" requires a tangible alteration or deprivation of property, loss of use was insufficient to trigger coverage); *Goodwill Indus. of Central Okla.*, 21 F.4th at 711 (holding the insured's "temporary inability to use its property for its intended purpose was not a 'direct physical loss.' To conclude otherwise would ignore the word 'physical' and violate the requirement that every part of a policy be given meaning."); *Ascent Hospitality*, 2022 WL 130722 at *2 (finding there was no ambiguity in a policy that limited coverage to physical loss or damage); *Santo's Italian Café*, 15 F.4th at 405 (same); *Sandy Point Dental*, 20 F.4th at 335-36 (holding partial loss of use did not amount to "direct physical loss" and rejecting argument that the presence of the virus at the premises would constitute a covered loss because "its impact on physical property is inconsequential: deadly or not, it may be wiped off surfaces using ordinary cleaning materials, and it disintegrates on its own in a matter of days"); *Oral Surgeons*, 2 F.4th at 1145 (rejecting oral surgery clinic's argument that the lost business income and extra expense it

11

sustained as a result of suspending non-emergency procedures were caused by

"direct loss" to property); *Gilreath Fam. & Cosmetic Dentistry*, 2021 WL 3870697

at *2 (finding neither public health orders, nor the presence of COVID-19

particles, caused "direct physical loss or damage" to dental practice's property

sufficient to trigger coverage).

Although some courts found the potential for coverage in the early wave of

COVID-19 related insurance litigation,[3] the clear majority of more recent cases

favor dismissing COVID-19 claims.  For example, since the beginning of 2022, at

least three federal district courts have dismissed nearly identical claims by health

---

[3] Most of the cases were decided prior to the fall of 2021, when the circuit courts
began weighing in.  *See e.g. Novant Health Inc. v. Am. Guar. & Liab. Ins. Co.*,
2021 WL 4340006 (M.D. N.C. Sept. 23, 2021); *Ross Stores, Inc. v. Zurich Am. Ins.
Co.*, 2021 WL 3700659 (Cal. Super. Ct. July 13, 2021); *Treo Salon, Inc. v. W.
Bend Mut. Ins. Co.*, 538 F.Supp.3d 859 (S.D. Ill. May 10, 2021); *Thor Equities,
LLC v. Factory Mut. Ins. Co.*, 531 F.Supp.3d 802 (S.D. N.Y. Mar. 31, 2021);
*Ungarean, DMD* v. CNA & Valley Forge Ins. Co., 2021 WL 1164836 (Pa. Ct.
Com. Pl. Mar. 25, 2021); *S. Dental Birmingham LLC v. Cincinnati Ins. Co.*, 527
F.Supp.3d 1341 (N.D. Ala. Mar. 19, 2021); *Boardwalk Ventures CA, LLC v.
Century-Nat'l Ins. Co.*, 2021 WL 1215892 (Cal. Super. Ct. Mar. 18, 2021);
*Kingray Inc. v. Farmers Group Inc.*, 523 F.Supp.3d 1163 (C.D. Cal. Mar. 4, 2021);
*Derek Scott Williams PLLC v. Cincinnati Ins. Co.*, 522 F.Supp.3d 457 (N.D. Ill.
Feb. 28, 2021); *In re: Society Ins. Co.*, 521 F.Supp.3d 729 (N.D. Ill. Feb. 22,
2021); *Cherokee Nation v. Lexington Ins. Co.*, 2021 WL 506271 (Okl. Dist. Ct.
Jan. 28, 2021); *Baldwin Academy, Inc. v. Markel Ins. Co.*, 2020 WL 7488945 (S.D.
Cal. Dec. 21, 2020); *JGB Vegas Retail Lessee, LLC v. Starr Surplus Lines Ins. Co.*,
2020 WL 7190023 (Nev. Dist. Ct. Nov. 30, 2020); *Seifert v. IMT Ins. Co.*, 495
F.Supp.3d 747 (D. Minn. Oct. 16, 2020); *N. State Deli, LLC v. Cincinnati Ins. Co.*,
2020 WL 6281507 (N.C. Super. Ct. Oct. 9, 2020); *Blue Springs Dental Care, LLC
v. Owners Ins. Co.*, 488 F.Supp.3d 867 (W.D. Mo. Sept. 21, 2020); *Studio 417, Inc.
v. Cincinnati Ins. Co.*, 478 F.Supp.3d 794 (W.D. Mo. Aug. 12, 2020).

care systems based on policies with the same, or substantially similar, policy language as at issue here. *See Carilion Clinic v. Am. Guarantee & Liability Ins. Co.*, 2022 WL 347617 (W.D. Va. Feb. 4, 2022) (finding healthcare system's losses arising out of the COVID-19 pandemic were not a "direct physical loss of or damage to" its property under a Zurich EDGE Healthcare Policy); *Olmstead Med. Ctr. v. Cont'l Cas. Co.*, 2022 WL 126336 (D. Minn. Jan. 13, 2022) (holding neither medical center's suspension of elective surgeries, nor the presence of COVID-19 constituted a direct physical loss of property to trigger coverage); *Conn. Children's Med. Ctr. v. Cont'l Cas. Co.*, 2022 WL 168786 (D. Conn. Jan. 19, 2022) ("In short, whether the theory is based on 'loss of use' of property or based on 'physical damage' from the COVID-19 virus itself, the result is the same: there is no 'direct physical loss or damage' to property.").

The Court finds the majority view and great weight of recent circuit authority persuasive.  Consistent with those cases, the Court finds Billings Clinic's claims for losses based on COVID-19 and the related public health orders do not constitute a "direct physical loss of or damage" to its property.  As such, Billings Clinic cannot plausibly assert a claim for coverage under the Time Element Coverages, Civil or Military Authority, Contingent Time Element, Ingress/Egress, Protection and Preservation of Property, or Protection of Patients Special

Coverages in the Policy, because they all require an element of "physical loss or damage."

### C.    Tenants Prohibited Access Coverage

The Special Coverage for Tenants Prohibited Access does not require direct physical loss of or damage to covered property.  (Doc. 8 at 76.)  Rather, the Coverage applies if: (1) access to the Insured Location by the Insured's suppliers, customers, or employees is physically obstructed (2) due to the owner, landlord or a legal representative of the building owner or landlord, prohibiting access to the Insured Location.  (*Id.*)  AGLIC argues Billings Clinic fails to assert a plausible claim for coverage under the provision because the Clinic does not allege any supporting facts to meet these requirements.  The Court agrees.

Billings Clinic alleges it "has incurred Gross Earning and Gross Profit losses as a result of Suspension of Billings Clinic's business activities at Insured Locations, because access to Insured Locations by Billings Clinic's suppliers, customers, or employees has been physically obstructed and prohibited by the Insured Locations' owners, landlords, or their representatives."  (Doc. 8 at ¶ 139.)  This allegation is little more than a formulaic recitation of the language of the Policy.  (*Compare* Doc. 8 at ¶ 139 *with* Doc. 8 at 76.)  Absent from the Complaint are any *facts* to show what physical obstruction blocked access to its locations, or how, where and when access was blocked, or which owner or landlord physically

obstructed or prohibited access to any premises.  At most, Billings Clinic alleges

that certain elective and non-urgent medical procedures were curtailed at the

premises.  (Doc. 8 at ¶¶ 82, 102.)  Billings Clinic's "threadbare recitals" of the

Policy's language, without alleging plausible and specific facts to show the

potential for coverage, is insufficient to withstand a motion to dismiss.  *Iqbal*, 556

U.S. at 663; *Bridal Expressions*, 2021 WL 5575753 at *2; *10E, LLC v. Travelers

Indem. Co. of Conn.*, 483 F.Supp.3d 828, 837 (C.D. Cal. Sept. 2, 2020).

### D.    Contamination Exclusion

AGLIC argues that all Coverages under which Billings Clinic seeks

indemnification, with the exception of the Interruption by Communicable Disease

Coverage (discussed below), are subject to the Policy's Contamination Exclusion.

Billings Clinic asserts the Contamination Exclusion is inapplicable.  AGLIC has

the better argument.

The Contamination Exclusion clearly excludes coverage for any condition of

property due to the actual presence of "any . . . virus."  (Doc. 8 at 95.)  As alleged

in the Complaint, COVID-19 is indisputably a virus.  Thus, the Policy

unambiguously excludes coverage.  Multiple courts across the country have

reached the same conclusion based on identical or substantially similar policy

exclusions.  *See e.g. Carilion Clinic*, 2022 WL 347618 at *15 (considering the

same Zurich EDGE Healthcare Policy at issue here and holding "the virus

provision in the Contamination Exclusion applies to bar Carilion Clinic's losses attributable to the COVID-19 pandemic[.]"); *Lindenwood Female College*, 2021 WL 5050065 at *5-6 (granting insurer's motion to dismiss based on identical Contamination Exclusion); *AECOM v. Zurich Am. Ins. Co.*, 2021 WL 6425546, *10 (C.D. Cal. Dec. 1, 2021) (same); *Zwillo*, 504 F.Supp.3d at 1041-42 (finding Pollution and Contamination Exclusion that defined contaminants as including a virus, prohibited coverage); *Northwell Health, Inc.*, 2021 WL 3139991 at *9 (same); *Circus LV*, 525 F.Supp.3d at 1277-78 (same); *Ralph Lauren Corp.*, 2021 WL 1904739 at *4 ("[T]he Contamination Exclusion unambiguously excludes coverage for 'any condition of property due to the actual or suspected presence of any . . . virus,' which would encompass the Virus that causes COVID-19.").

Billings Clinic points to an endorsement attached to the Policy, entitled "Amendatory Endorsement – Louisiana" to argue AGLIC intended to delete the exclusion's reference to a virus.  But this endorsement plainly only applies to property located in Louisiana.  *Carilion Clinic*, 2022 WL 347618 at *15 (discussing cases addressing this endorsement and finding "the only plausible way to harmonize the various provisions of the Zurich EDGE Policy . . . is to read the Amendatory Endorsement – Louisiana as applying solely to property in Louisiana"); *AECOM*, 2021 WL 6425546 at *10 (collecting cases and explaining "[o]ther courts considering these same Policies have found that the Louisiana

16

Endorsement is limited to the coverage of risks in Louisiana."); *Manhattan Partners, LLC v. Am. Guarantee & Liab. Ins. Co.*, 2021 WL 1016113, *2 (D. N.J. Mar. 17, 2021) (rejecting argument that the Contamination Exclusion was modified by endorsement, explaining, "The endorsement to which Plaintiffs refer is titled "Amendatory Endorsement – Louisiana" and appears in a list of state-specific endorsements.  (*See* Policy EDGE-219-C.)  Had the parties intended to remove "virus" from the Contamination provision, they could have done so with a general endorsement that was not limited to a single state."); *Lindenwood Female College*, 2021 WL 5050065 at *6 (same); *contra Novant Health Inc.*, 2021 WL 4340006 at *4-5.

Thus, even if the Court were to find that Billings Clinic's losses potentially fall within one of the Coverages discussed above, the Court finds AGLIC has met its burden to show the Contamination Exclusion unambiguously prohibits coverage.

### E.    Interruption by Communicable Disease Coverage

Finally, the Court must consider whether Billings Clinic has asserted a plausible claim for coverage under the Interruption by Communicable Disease provision.  Like the Tenants Prohibited Access Coverage, the Interruption by Communicable Disease Coverage does not require direct physical loss of or damage to covered property.  AGLIC also concedes it is not precluded by the

17

Contamination Exclusion.[4]  Thus, it appears there could be a potential for coverage.  Nevertheless, AGLIC argues Billings Clinic has failed to allege facts that would satisfy the requirements for coverage under the provision.

For the Interruption by Communicable Disease Coverage to apply, the alleged loss must result from the necessary suspension of the Insured's business activities at an Insured Location if the suspension is: (1) caused by an order of an authorized governmental agency enforcing any law or ordinance regulating communicable diseases; and (2) portions of the location are declared uninhabitable due to the threat of the spread of communicable disease such that access to those portions of the Location are prohibited.  (Doc. 8 at 79.)

The parties dispute whether Billings Clinic can satisfy the first element, namely whether the various executive orders, guidelines, and news releases, attached to the Complaint constitute orders as required by the Policy.  But even construing the allegations in the light most favorable to Billings Clinic, and assuming the exhibits attached to the Complaint qualify as "order[s] of an authorized governmental agency," the Court finds the Clinic has not plausibly alleged facts to satisfy the other requirements for coverage.

---

[4] AGLIC explains that the Interruption by Communicable Disease Coverage provides a limited exception to the Contamination Exclusion up to the sublimit of $1,000,000.  (Doc. 21 at 12, n. 11.)

The Complaint suffers from the same defect noted above with respect to the Tenants Prohibited Access Coverage – the allegations merely track the language of the Policy, and fail to allege supporting *facts*.  Allegations that "do no more than paraphrase the language of the Policy without specifying facts that could support recovery under the Policy" are "'conclusory allegations of law' that plainly cannot survive a Rule 12(b)((6) challenge." *10E, LLC*, 483 F.Supp.3d 828 at 837.

Here, Billings Clinic alleges "[t]he spread of COVID-19 and the Government Shutdown Orders arising from the public health crisis caused Billings Clinic to incur a necessary Suspension, both partial and total, in its business activities caused Billings Clinic's Locations to be uninhabitable due to the threat of the spread of COVID-19."  (Doc. 8 at ¶ 141.)  But the Clinic does not allege any facts plausibly showing that any portion of its locations were declared uninhabitable.  Also critically absent are any facts explaining how, when and where access to its locations was prohibited.  The Clinic's allegation that it suspended some elective procedures falls short of establishing its entitlement to coverage.  *See Northwell Health*, 2021 WL 3139991 at *7-8 (finding health care provider failed to state a claim for coverage under an Interruption by Communicable Disease provision because executive orders that directed hospitals to cancel elective procedures and established conditions under which the public could access hospitals fell "far short of 'prohibiting' access"); *Palomar Health*,

19

2021 WL 4035005 at *9 (finding health care provider's claim for indemnification

under the same Interruption by Communicable Disease Coverage at issue here

failed because the insured did "not assert they were prohibited by government

order from entering their facility").

Thus, the Court finds Billings Clinic has not alleged facts to plausibly

establish coverage under the Interruption by Communicable Disease provision in

the Policy.

## III.   CONCLUSION

In sum, Billings Clinic fails to state a claim for breach of contract and

declaratory judgment because the Complaint does not allege facts to plausibly

establish coverage under any provision of the Policy.  As such, AGLIC's Motion to

Dismiss should be granted.  Generally, leave to amend is freely granted.  But

where amendment would be futile, there is no reason to prolong litigation by

allowing further amendments.  *Lipton v. Pathogenesis Corp.*, 284 F. 3d 1027, 1039

(9th Cir. 2002); *Klamath-Lake Pharmaceutical Ass'n v. Klamath Med. Serv.*

*Bureau*, 701 F. 2d 1276, 1293 (9th Cir. 1983).

Here, it might be possible for Billings Clinic to amend the Complaint to state

a claim for coverage under the Interruption by Communicable Disease Coverage.

But any attempt to amend the Complaint with regard to the Time Element

Coverages, Civil or Military Authority, Contingent Time Element, Ingress/Egress,

Protection and Preservation of Property, or Protection of Patients Special Coverages would be futile in light of the Court's determination regarding the meaning of "direct physical loss of or damage to" property and the Contamination Exclusion.

Therefore, **IT IS RECOMMENDED** that AGLIC's Motion to Dismiss (Doc. 12) be **GRANTED without prejudice as to the Interruption by Communicable Disease Coverage, and with prejudice as to all other claims for coverage.**

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 22nd day of February, 2022.

TIMOTHY J. CAVAN
United States Magistrate Judge

21